UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL CALHOUN #379175,

      Plaintiff,                                     Hon. Robert J. Jonker

v.                                                 Case No. 1:20-cv-697

CORIZON HEALTH, INC., et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

Now before the Court is the Motion for Summary Judgment of Defendants Corizon Health Inc., Keith Papendick, M.D., Sylvie Stacy, M.D., Kaelynn Pfeil, and Connie (McCool) Whipple. (ECF No. 42.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.

**I. Background**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued Defendants Corizon Health, Inc., Keith Papendick, M.D., Sylvie Stacy, M.D., Kaelynn Pfeil, and Connie Whipple, pursuant to 42 U.S.C. § 1983, alleging that they violated his rights under the Eighth and Fourteenth Amendments by failing to treat his serious medical need, that is, failing to arrange an MRI and schedule him for an orthopedic consult for evaluation of his shoulder pain and failing to provide him prescription medication to alleviate the pain associated with his chronic arthritic condition. The events at issue in this case occurred while Plaintiff was incarcerated at his present facility, Muskegon Correctional Facility (MCF).

Corizon is a private corporation under contract with the MDOC to provide medical services to inmates. (ECF No. 1 at PageID.1.) Defendant Dr. Papendick is the Utilization Management Outpatient Medical Director for Corizon. (ECF No. 43 at PageID.391.) In that position, Dr. Papendick is not involved with the day-to-day medical care of inmates. Instead, his duties include evaluation of provider requests for offsite medical services that cannot be provided at MDOC facilities. (*Id.* at PageID.392.) When considering a provider's request, he reviews the associated prisoner medical records that are either identified by the medical provider or are determined to be associated with the outpatient healthcare request based on the information provided by the medical provider. Dr. Papendick then recommends an appropriate course of treatment, which may involve the treatment requested or an alternative treatment plan (ATP). (*Id.*) Defendant Dr. Stacy is a Utilization Management Outpatient Physician for Corizon. (ECF No. 42-4 at PageID.327.) She performs essentially the same duties as Dr. Papendick—reviewing provider requests for offsite medical treatment and recommending an appropriate course of treatment, either as requested or an ATP. (*Id.* at PageID.328.) Defendants Pfeil and Whipple are utilization management clerical assistants. (ECF No. 42-5 at PageID.331; ECF No. 42-6 at PageID.333.) They are not involved in medical decisions, are not medical personnel, and are limited to performing administrative tasks involved in processing consultation requests. (ECF No. 42-5 at PageID.332; ECF No. 42-6 at PageID.334.)

Plaintiff has a history of chronic pain and decreased range of motion in his left shoulder as a result of an injury he sustained in 2010 while housed at the Richard A. Handlon Correctional Facility. In July 2012, Lyle Mindlin, D.O., noted that an x-ray image showed "degenerative changes with possible Bankhart deformity of the glenoid." (ECF No. 1 at PageID.3–4.) Plaintiff was transferred to MCF in early February 2013. (*Id.* at PageID.4.)

Several years later, in late 2018, Plaintiff again sought treatment for pain and reduced range of motion in his left shoulder. His MDOC medical records reflect the treatment he received during this time. On November 1, 2018, Plaintiff sent a "kite," or a note, to healthcare complaining of "excruciating pain and joint stiffness" in his left arm and shoulder caused by a preexisting condition of "chronic degenerative arthritis." Plaintiff said that the pain and stiffness and resulting loss of range of motion was affecting his ability to get down from his assigned top bunk, and he inquired about surgery. RN Mitteer responded that Plaintiff had been scheduled for a nursing evaluation. (ECF No. 42-2 at PageID.254.)

On November 2, 2018, RN Brunsting examined Plaintiff regarding his shoulder pain. Plaintiff reported that he had experienced increased pain in the last six weeks to two months and had broken his clavicle when he was 11 years old. Plaintiff said that he began to experience "frozen shoulder and limited movement" in 2010 and had refused a cortisone shot that had been offered at that time. He requested x-rays of his shoulder, possible surgery, and a bottom-bunk detail. RN Brunsting noted no tenderness, bruising, swelling, or pain with palpation of the shoulder, but Plaintiff demonstrated a limited range of motion. RN Brunsting gave Plaintiff 15 packets of Ibuprofen and a temporary bottom-bunk detail. Plaintiff was to contact healthcare if he experienced any new symptoms. Plaintiff was referred to the medical provider. (*Id.* at PageID.256–58.)

On November 29, 2018, Dr. Asche examined Plaintiff for his shoulder pain. Dr. Asche noted that Plaintiff had longstanding left shoulder dysfunction that had recently worsened due to increased pain and reduced range of motion. Plaintiff was unable to abduct his left arm to horizontal but was able to adduct it "reasonably normally." His left arm internal rotation was "fair," but he was unable to perform external rotation. He performed clockwise and counterclockwise

windmilling "poorly." Dr. Asche ordered an x-ray of the left shoulder and a bottom-bunk detail. (*Id.* at PageID.259–61.)

An x-ray was taken on December 5, 2018. The impression revealed markedly advanced arthritic changes of the glenohumeral joint articulating surface, which appeared to be osteoarthritic changes, and mild arthritic changes at the acromioclavicular joint. Dr. Asche performed a chart review on December 7, 2018, and noted that the radiologist had identified far-advanced osteoarthritis from the December 5, 2018 x-rays. (*Id.* at PageID.264, 266.)

On December 14, 2018, Dr. Asche submitted an off-site consultation request (407) for an initial orthopedic consult. Dr. Asche noted that Plaintiff had progressive left shoulder dysfunction and could not get his left arm to horizontal and above, and that x-rays of the left shoulder had revealed markedly arthritic changes that were believed to be osteoarthritic changes. (*Id.* at PageID.267.) Dr. Asche noted that he had discussed the x-ray findings with Plaintiff and discussed the treatment options, and that Plaintiff was in favor of a 407-submission seeking an orthopedic consult. Dr. Asche also noted that he discussed the process with Plaintiff for the consult being authorized versus being not authorized. (*Id.* at PageID.269.)

On December 17, 2018, Dr. Papendick reviewed the 407 request and determined that medical necessity for the consult had not been demonstrated. Instead, Dr. Papendick provided an ATP for a physical therapy evaluation prior to an orthopedic consult. (*Id.* at PageID.271.) On December 20, 2018, Dr. Asche met with Plaintiff to discuss the ATP. Plaintiff expressed his understanding of the recommendation for a physical therapy evaluation first, with a possible subsequent resubmission of a 407 request for an orthopedic consult. Dr. Asche noted that he submitted a 407 request for a physical therapy consult at Duane Waters Hospital (DWH). (*Id.* at PageID.273–75.) Dr. Papendick approved the request the same day, noting that the physical

4

therapy evaluation was to include training for a home exercise program directed toward Plaintiff's symptoms. (*Id.* at PageID.277.)

On March 7, 2019, Scott Weaver, PT, evaluated Plaintiff's left shoulder at DWH. PT Weaver assessed that Plaintiff minimally had adhesive capsulitis (frozen shoulder), most likely had underlying rotator cuff issues over many years, and had decreased range of motion, strength, and joint mobility. PT Weaver assessed Plaintiff's rehab potential as "poor." PT Weaver instructed Plaintiff in range of motion exercises and indicated that Plaintiff should follow up for an MRI to rule out pathology. PT Weaver set a goal that Plaintiff would be independent with a progressive home exercise program within one week. (*Id.* at PageID.281.)

On March 12, 2019, Dr. Asche updated Plaintiff's chart and noted that PT Weaver had taught Plaintiff a home exercise program and had estimated Plaintiff's rehab potential as poor. (*Id.* at PageID.285.)

Plaintiff apparently did not seek services from healthcare regarding his shoulder again until October 28, 2019, when he sent a kite complaining of continued inflammation and pain in his left shoulder and arm, as well as increasingly limited range of motion, and swelling and pain in his left eye. (*Id.* at PageID.286.) Plaintiff was seen by RN Mitteer on October 30, 2019 regarding his complaints. RN Mitteer noted that Plaintiff was sent to physical therapy earlier in the year, but Plaintiff stated that nothing had helped. RN Mitteer contacted the physician for same day treatment of his eye and shoulder pain. (*Id.* at PageID.288–89.) PA LaNore provided Plaintiff Ibuprofen, instructed him to not engage in activity that might aggravate his shoulder, and scheduled him for a follow-up appointment. (*Id.* at PageID.291.)

On November 21, 2019, PA Rohrs saw Plaintiff for a scheduled provider visit regarding his chronic left shoulder pain, which Plaintiff reported was now developing in the right shoulder

in the area of the bicep tendon. PA Rohrs noted that Plaintiff had been doing range of motion exercises, but they had not helped. PA Rohrs discussed pain medication with Plaintiff, but Plaintiff declined because he does not like to take medication. An x-ray of the right shoulder was ordered. PA Rohrs also noted that she had originally discussed an "ortho" referral, but after reviewing the physical therapy note, she completed a 407 request for an MRI of the left shoulder. (*Id.* at PageID.292–295.) On November 25, 2019, Dr. Stacy reviewed PA Rohrs' 407 request and determined that the criteria for an MRI were not met. Instead, Dr. Stacy provided an ATP, noting that Plaintiff's symptoms had been chronic since 2010, and had not shown acute changes or deterioration that would require advanced imaging at that time. Dr. Stacy observed that Plaintiff was known to have arthritic changes, per x-ray studies. She recommended ongoing management based on history, exam, and x-ray findings. (*Id.* at PageID.301–02.)

On November 27, 2019, Plaintiff met with PA Rohrs for a scheduled provider visit to discuss the ATP for his left shoulder. PA Rohrs noted that the pain had become progressively worse since 2010 despite treatment with Mobic, Tylenol, Toradol IM (injection), and Ibuprofen. Plaintiff agreed with PA Rohrs's plan to submit an appeal and to follow up the next month. (*Id.* at PageID.306–07.)

On December 4, 2019, PA Rohrs updated Plaintiff's chart, noting that she had received an email indicating that the ATP had gone through the ATP appeal process, and the committee had decided to uphold the ATP and place it in final ATP status. (*Id.* at PageID.308.) On December 30, 2019, PA Rohrs saw Plaintiff for a scheduled provider visit for chronic left shoulder pain and right shoulder pain that had started two-to-three months earlier. During the visit, Plaintiff declined pain medication and agreed with a plan of submitting a 407 for an orthopedic surgery consult for further recommendations following an electronic medical record system change. (*Id.* at PageID.314–16.)

On January 21, 2020, PA Rohrs completed a chart review/update noting that a 407 was completed for an orthopedic consult. (*Id.* at PageID.319–20.) On January 29, 2020, PA Rohrs completed a chart review/update, noting that the orthopedic consult request was given an ATP, as medical necessity had not been demonstrated at that time. The reviewer recommended that Plaintiff continue with range of motion exercises per Physical Therapy. (*Id.* at PageID.321.)

On January 31, 2020, Dr. Asche saw Plaintiff for a provider visit and was advised of the ATP for the orthopedic consult and recommendation for range of motion exercises. (*Id.* at PageID.322–23.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

Plaintiff alleges that Defendants, who were members of Corizon's Institution Utilization Review Committee, were deliberately indifferent to Plaintiff's serious medical need regarding his left shoulder pain caused by his degenerative arthritic condition when they deferred his treating physicians' requests for an outside orthopedic consult and an MRI in order to rule out pathology

7

in his left shoulder joint. (ECF No. 50 at PageID.435.) Plaintiff further argues that Defendants were deliberately indifferent by deferring his provider's request to enroll Plaintiff into chronic care for his degenerative arthritic condition and by failing to provide him pain medication to help mitigate the debilitating chronic pain from his left shoulder.

### A. Eighth Amendment Claim[1]

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

---

[1] As an alternative ground for summary judgment, Defendants contend that Plaintiff failed to exhaust his administrative remedies prior to filing this action. Because Plaintiff's claims against all Defendants fail on the merits, the Court need not address Defendants' exhaustion argument. *See Weatherspoon v. Lnu*, No. 14-12789, 2015 WL 13741824, at *2 n.2 (E.D. Mich. Dec. 23, 2015), *report and recommendation adopted*, 2016 WL 1237661 (E.D. Mich. Mar. 30, 2016); *Gonzalez v. Rushing*, No. 4:11CV178, 2012 WL 529823, at *2 (N.D. Ohio Feb. 17, 2012).

attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted). When a plaintiff claims that care he received was inadequate, he must demonstrate that his doctor rendered grossly incompetent treatment. *Rhinehart*, 894 F.3d at 737. To meet this standard, the plaintiff must "present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so." *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 945–46 (6th Cir. 2010)).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004).

1.  **Defendants Pfeil and Whipple**

In support of their contention that they are entitled to summary judgment, Defendants Pfeil and Whipple have presented affidavits stating that they are clerical assistants who perform administrative tasks and are not medical personnel. They further state that they do not make or participate in medical decisions and were not involved in decisions regarding Plaintiff's, or any other prisoner's, medical care. (ECF No. 42-5 at PageID.331–32; ECF No. 42-6 at PageID.333–34.) These assertions are consistent with Plaintiff's medical records, which show that Drs. Papendick and Stacy reviewed Dr. Asche's and PA Rohr's 407 requests and provided ATPs after finding the criteria not met. (ECF No. 42-2 at PageID.270–71, 301–02.)

Plaintiff presents no evidence in response to these affidavits that creates a genuine issue of material fact regarding Defendants Pfeil's and Whipple's involvement in decisions regarding Plaintiff's medical care. The evidence before the Court shows that they did not participate in medical decisions in any manner. Accordingly, I recommend that Defendants Pfeil and Whipple

10

be granted summary judgment. *See Farr v. Centurion of Tenn.*, No. 3:16-CV-387, 2020 WL 1547067, at *5 (E.D. Tenn. Mar. 31, 2020) (concluding that defendant was entitled to summary judgment on the Plaintiff's claim of deliberate indifference where her uncontradicted affidavit established that she was not involved in the plaintiff's medical care and did not make any decision regarding that care); *Martin v. Buchanan*, No. 1:14 CV 2812, 2015 WL 3646094, at *4 (N.D. Ohio June 9, 2015) ("Because Judge Buchanan and Prosecutor Tiffany Hill were not involved in making medical decisions for Plaintiff while he was in jail, he cannot sustain a claim against them for deliberate indifference to serious medical needs.").

### 2.     Dr. Papendick

Plaintiff's medical records show that Dr. Papendick was minimally involved in Plaintiff's medical care. He reviewed the orthopedic consultation request that Dr. Asche submitted on December 14, 2018, and issued an ATP for a physical therapy evaluation prior to an orthopedic consult. (ECF No. 42-2 at PageID.271.) There is no indication in the record that Dr. Papendick was involved in Plaintiff's treatment at any point thereafter.

Plaintiff fails to present any evidence that suggests that Dr. Papendick ignored Plaintiff's serious medical needs or disregarded a substantial risk to Plaintiff's health. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). His claim against Dr. Papendick—that he should have approved the request for an orthopedic consult instead of requiring physical therapy—amounts only to disagreement with Dr. Papendick's exercise of medical judgment, not a deliberate indifference claim. "[A] difference in opinion between a prisoner and the medical staff about treatment does not state a cause of action." *Kirkham v. Wilkinson*, 101 F. App'x 628, 630 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 107); *see also Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) (stating that "[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is

not cognizable as a federal constitutional claim"). As stated in *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014), "a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim."

In short, Plaintiff fails to present evidence that Dr. Papendick's decision amounted to medical care that was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake*, 537 F.2d at 860 n.5). Moreover, Plaintiff fails to show that Dr. Papendick ignored a substantial risk of serious harm to Plaintiff, i.e., that he with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

As noted above, Plaintiff appears to claim that Dr. Papendick also denied him pain medication and failed to enroll Plaintiff in the chronic care clinic. There is no evidence to support these allegations. As set forth above, Dr. Papendick was not involved in Plaintiff's ongoing care, and there is no evidence that Dr. Papendick made any decision regarding Plaintiff's request for pain medication. Moreover, the medical record shows that Plaintiff declined pain medication on several occasions. (ECF No. 42-2 at PageID.294, 316.) Likewise, there is no indication that Dr. Papendick failed to enroll Plaintiff in the chronic care clinic. In fact, the 407 request that Dr. Asche submitted indicated that Plaintiff was already enrolled in the chronic care clinic when Dr. Asche submitted the request. (ECF No. 42-2 at PageID.267.) In any event, there is no evidence that Dr. Papendick was responsible for this issue. Accordingly, I recommend that the Court grant Dr. Papendick summary judgment on Plaintiff's claim.

### 3. Dr. Stacy

Like Dr. Papendick, Dr. Stacy played an extremely limited role in Plaintiff's medical care. Her sole involvement was reviewing PA Rohrs's 407 request for an MRI and providing an ATP because acute changes or deterioration in Plaintiff's left shoulder justifying advanced imaging had not been shown. (ECF No. 42-2 at PageID.302.) For the same reasons discussed above as to the

claim against Dr. Papendick, Plaintiff's claim against Dr. Stacy simply amounts to a difference of opinion regarding medical treatment. Perhaps Dr. Stacy was negligent in denying the request for an MRI, but such failure cannot provide a basis for a deliberate indifference claim. *See Comstock*, 273 F.3d at 703 ("The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."). Moreover, Plaintiff provides no evidence that Dr. Stacy provided "grossly or woefully inadequate care," such that her conduct rises to the level of cruel and unusual punishment. *Phillips*, 14 F.4th at 535.

Accordingly, I recommend that the Court grant summary judgment on this claim as well.

### 4. Corizon

A private provider of health care services to prisoners, such as Corizon, cannot be held liable under Section 1983 on a theory of respondeat superior or vicarious liability. *Perry v. Corizon Health, Inc.*, No. 17-2489, 2018 WL 3006334, at *1 (6th Cir. June 8, 2018) (citing *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014)). To state a claim for relief against a private contractor, a plaintiff must allege that his injuries resulted from the contractor's unconstitutional policy or custom. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Therefore, to impose liability on a private contractor, a plaintiff must identify the contractor's policy or custom, connect it to the contractor, and show that the policy caused the injury or deprivation. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Moreover, a Plaintiff suing an entity such as Corizon must also establish an underlying violation of his constitutional rights. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (explaining that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional

violation, and (2) if so, whether the city is responsible for that violation."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

Plaintiff's claim against Corizon fails on two fronts. First, for the reasons set forth above, Plaintiff fails to demonstrate a constitutional violation by any Defendant. Accordingly, there is no basis for a claim under Section 1983 against Corizon. Second, even if Plaintiff had established a violation, he fails to present any evidence showing that any Defendant acted pursuant to an unconstitutional policy or custom of Corizon that caused the violation.

Accordingly, Plaintiff's claim against Corizon is subject to summary judgment as well.

### B. Fourteenth Amendment Claim

Plaintiff also alleged in his complaint that Defendants deprived him of reasonable access to specialized medical care in violation of his right to due process under the Fourteenth Amendment. To the extent Plaintiff intended to assert a separate due process claim, it is subject to dismissal because it is the Eighth Amendment, rather than the Fourteenth Amendment, that applies to medical-care claims brought by convicted prisoners. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685–86 (6th Cir. 2001).

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 42) and dismiss Plaintiff's complaint with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

Dated: November 1, 2021                    /s/ Sally J. Berens
                                           SALLY J. BERENS
                                           U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).